## DUNCAN, TRUSTEE, *v.* GEORGE E. MOODY.

### Trusts—Trustee—Conveyance.

Where a trust exists, and the trustee is entitled to force a conveyance of property from the husband to the trustee for the benefit of the wife, and the husband himself becomes trustee, he may lawfully convey or have conveyed to him as trustee of his wife.

### Evidence of Judgment.

While the record of a judgment is the best evidence of its existence, a party, by not objecting, may waive the production of the best evidence and consent that its existence and contracts may be proven by secondary evidence.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

January 13, 1877.

OPINION BY JUDGE COFER:

The appellee, having recovered a judgment at law against N. R. Thompson and B. H. Duncan, and an execution issued thereon having been returned nulla bona, brought this suit in equity to enforce satisfaction of the judgment. He caused an attachment to issue, which was levied upon two carriages in the possession of Bates & Rubel, who answered that said carriages belonged to B. H. Duncan, trustee for his wife, Mary T. Duncan, and denied that said B. H. Duncan had any interest in them except as trustee.

An alias attachment was issued and levied upon a lot of furniture, when Mrs. Duncan and her husband, as trustee, filed their petition claiming it as trust property. Duncan answered, alleging that he owned nothing in his own right which could be subjected to the payment of his debts except choses-in-action amounting to near $200,000, all of which he offered to surrender upon condition that the appellee would accept them in satisfaction of his debt then amounting to less than $700. He subsequently, under rule, filed notes amounting to a few thousand dollars, and offered to surrender a judgment in his favor for $6,000, besides interest, but it is evident that neither the notes nor the judgment are of any value.

The appellee amended his petition and alleged that at the time of the creation of his debt, which the evidence shows was on the 25th day of November, 1872, and until May 24, 1874, Duncan was the owner in fee of an undivided fifth interest in the estate of John L. Martin, deceased; that on the 24th day of April, 1874, he fraudulently obtained a decree directing the commissioner of the chancery court to convey to him, the said Duncan, in trust for his wife, all the property which had been set apart to him under orders of the chancery court in a partition of Martin's estate, and that the conveyance made in pursuance of that order was fraudulent in fact, and was without consideration, and therefore fraudulent in law, as to the appellee.

The answer of Duncan and wife to the amended petition contains ten paragraphs. Giving to the first nine paragraphs the most liberal construction the language employed will allow, they amount to no more than a technical denial, in the very language of the amendment, of the allegations contained therein.

The tenth paragraph is in these words, viz: "These defendants allege that the deed of trust, by which the interest of B. H. Duncan in the estate of J. L. Martin was vested in a trustee for the benefit of Mart T. Duncan, was legally and properly made, and for due and lawful consideration, long prior to the creation of any indebtedness to, or of any claim by the plaintiff, and that no indebtedness of defendant, B. H. Duncan, prior to or at the time of the making of such deed, is now outstanding."

On the motion of the appellee, a rule nisi was awarded against Duncan, trustee, and Mrs. Duncan, to make the tenth paragraph of their answer more specific as to the date and consideration of the deed of trust therein pleaded. To that rule Duncan and wife demurred, and it was quashed.

The appellee introduced portions of the record of the suit in which Martin's estate was partitioned, which shows that when it was filed, January 2, 1872, Duncan, who was plaintiff therein, claimed to be the absolute owner of the interest subsequently conveyed to him in trust for Mrs. Duncan, and that he so continued to claim until April 24, 1874, when he filed the amended petition, asking that the portion allotted to him should be conveyed in trust for her. Up to that time Mrs. Duncan does not appear to have been a party to the suit. The commissioners, to make partition, seem to have allotted B. H. Duncan's interest to him, and in the judgment con-

firming the report that interest was directed to be conveyed to him in trust for his wife.

It thus appears that so far as the record, out of which the commissioner's deed emanated, shows an interest in Mrs. Duncan, that interest dates from a period not earlier than April 24, 1874, and that so far as the trust title depends upon that record, it is subsequent in date to the creation of the appellee's debt, and as that record discloses no consideration for the trust, it is voluntary and fraudulent in law as to the appellee, unless some sufficient consideration has been shown aliundi.

It is attempted to sustain the trust title in the following manner: It is proved that prior to October 1, 1867, B. H. Duncan became indebted to his father, Garnett Duncan, in the sum of $5,981.07, and in consideration thereon on that day executed his note to said Garnett for that sum; that the note was subsequently assigned by Garnett Duncan to Churchill, as trustee for Mrs. Duncan; that Churchill instituted suit on the note, and recovered judgment thereon, and that an execution issued on the judgment and was levied by the sheriff of Jefferson county upon the undivided interest of B. H. Duncan in the realty belonging to the estate of J. L. Martin, which interest was sold April 6, 1868, and purchased by Churchill. Churchill transferred his purchase to Duncan, who had in the meantime become trustee for Mrs. Duncan, and January 17, 1870, the sheriff conveyed to him as trustee the estate or interest purchased by Churchill.

In January, 1872, B. H. Duncan brought a suit in his own name, and without disclosing any interest in Mrs. Duncan or making her a party, for the division of the Martin estate, which was had, and his one-fifth interest was set off to him; and thereupon he filed the amended petition of April 24, 1874, and caused the property allotted to him to be conveyed to himself in trust for his wife.

The claim of title under the sheriff's deed is not disclosed in the answer. The tenth paragraph was no doubt intended to let it in, but the language is not broad enough nor sufficiently explicit to warrant its introduction as an independent source of title, and the appellant refused, when called upon, to make it more definite. The language of that paragraph, when read in the light of the petition to which it was an answer, could readily be understood as referring to the commissioner's deed, and it was no doubt so understood by the court below when passing upon the rule to make the language

more specific. We cannot, therefore, regard the claim of title under the sheriff's deed as made out.

But treating the tenth paragraph as an answer to the amended petition, and as referring to the deed therein set up and attached, as without consideration, it presents a valid defense, because it contains an allegation that the deed was based upon a valuable consideration; and we are of the opinion that the prior purchase under the execution and the sheriff's deed gave Duncan, or rather to her trustee, such claim to the land as entitled her to have the interest of her husband in Martin's estate, when allotted, conveyed to her use, as was done by the commissioner's deed.

The note to Garnett Duncan is shown to have been executed for an existing debt, and if that debt was wholly or in part satisfied by the sale of Duncan's interest in the property sold, there was a valid consideration received by him for whatever interest Churchill, as trustee, acquired by the purchase. The debt that Duncan owed to his wife's trustee was wholly or partially satisfied by the sale, and there can be no doubt but if Churchill had continued to act as trustee, he could, so long as the sheriff's sale remained standing, have compelled Duncan to convey the property allotted to him in the division, and that which Duncan might have been compelled to do by another acting as trustee for his wife, he might lawfully do of his own volition when he became trustee himself.

The judgment in favor of Churchill, trustee, is not exhibited, and it is contended by the learned counsel for the appellee, that, as it is necessary in making out title under an execution sale to produce the judgment on which the execution issued, the attempt to sustain the commissioner's deed by showing a consideration therefor through the execution sale and sheriff's deed has failed.

The appellee exhibited the commissioner's deed and attacked it on the ground that it was voluntary and fraudulent. He did not dispute, but on the contrary by clear implication, if not in terms, admitted that the title was in Duncan, as trustee. The only thing then necessary to be done to defeat his action was to show a consideration for the commissioner's deed, and meet the charge of fraud in fact. In order to show a consideration the appellants introduced and read an execution, and the sheriff's return thereon, showing a levy upon and sale of an undivided interest in certain real estate, and that that interest had been purchased by Churchill as trustee for Mrs. Duncan. If there was in fact no judgment, the sale was void, and might have been quashed upon the motion of

either B. H. Duncan or Churchill, but if they chose to waive their rights in this respect and to treat the sale as valid, the subsequent creditors of Duncan cannot complain; nor can they treat the sale as void any more than the creditors of one who has sold land by verbal contract can complain that he chooses to comply with his agreement and to convey the land, instead of repudiating the contract so as to enable them to obtain satisfaction of their debts out of it. That Duncan waived in favor of his wife's trustee, a clear right which he had to set aside the sale, if there was no judgment, might afford strong evidence of fraud in fact, but it cannot be used to defeat the commissioner's deed on the ground that it is without consideration.

But aside from this it was proved by parol, and the testimony was read without objection, that suit was brought on B. H. Duncan's note and judgment recovered in the court from which the execution purports to have been issued.

Counsel argue that, parol evidence being inadmissible to prove a matter of record, the court will exclude or disregard it without objection or exception by the party to be prejudiced by it. No authority sustaining that position has been cited, and none is known to the court. The fact attempted to be proved, viz: that there was a judgment, was competent. The best evidence of its existence was the record, or an authenticated copy, but the appellee had a right to waive the production of the primary and best evidence, and to consent that it might be proved by secondary evidence, and he did so by failing to except to the evidence offered. Testimony which is not only incompetent, but is incapable of being made competent, need not be excepted to, as, for example, mere hearsay, but testimony which is only prima facie inadmissible, and is therefore of such a character that it might be made competent by laying a proper foundation for its admission, must be excepted to.

Was the commissioner's deed fraudulent in fact? That B. H. Duncan was indebted to his father in the amount of the note assigned to Churchill is not disputed. It does not appear that he then owed any other debt, or that he contemplated becoming indebted, and there is therefore an entire absence of motive to make a fraudulent disposition of his estate. He does not appear to have had any agency in making or causing the levy or sale under the execution. He owed the debt to the trustee of his wife, and as it does not appear that he owed any one else, or was contemplating the creation of other debts, the simple fact that the motives induc-

ing him to allow property of many times the value of the debt to be sold, and the title to become vested in his wife, or that he neglected or refused to take steps to defeat the purchase by her trustee, will not of itself warrant the judicial conclusion that the levy and sale, or the commissioner's deed for which they serve as a consideration, was intended to defraud creditors.

Considerable stress is laid in argument on the fact that although the sale under the execution was made in April, 1868, and the sheriff's deed to Churchill, trustee, was made in January, 1870, Duncan filed his petition in January, 1872, for partition of the Martin estate, in which he alleged that he was then the owner of his interest in that estate, and on the further fact that he was treated as the owner, and his interest was allotted to him. Mrs. Duncan was not a party to that suit until she was made so by the amended petition of April 24, 1874, and the allegations of her husband and the action of the court and commissioners in treating him as the owner cannot affect her title nor furnish evidence against her to prove that the commissioner's deed was fraudulent. *Brashear v. Burton,* 3 Bibb 9; *Shark v. Wickliffe,* 3 Litt. 14.

We are therefore of the opinion that the appellee failed to show that the deed in question was either voluntary or fraudulent, and the judgment subjecting the property embraced in it to sale to satisfy appellee's judgment is *reversed,* and the cause is remanded with directions to dismiss so much of the petition as attacks that deed.

*B. H. Duncan, W. R. Thompson, R. J. Elliott, for appellant.*

*Russell & Helm, for appellee.*